UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT JONES,

                Plaintiff,

-against-

SCOTT M. KEHAN, Commissioner, Office of Child Support Enforcement; JAMES MEEHAN; SCOTT M. LEKAN, Commissioner, Office of Child Support Enforcement, Subsidiary of the United States Department of Health and Human Services "HHS" et al., Seq.,

                Defendants.

1:21-CV-9315 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Robert Jones, who is currently incarcerated in the Shawangunk Correctional Facility, brings this *pro se* action invoking multiple federal statutes, including 42 U.S.C. §§ 653 and 1983, as well as the Fair Debt Collection Practices Act, seeking damages and injunctive relief. His claims arise from the manner in which government officials have calculated and collected child-support debt from him. Plaintiff sues the following individuals: (1) Scott M. Kehan, whom Plaintiff alleges is the Commissioner of the New York State Office of Child Support Enforcement; (2) James Meehan; and (3) Scott M. Lekan, a former Principal Deputy Secretary of the United States Department of Health and Human Services ("HHS"), and the former Acting Commissioner of the Office of Child Support Enforcement within HHS's Administration for Children and Families.[1]

---

[1] At one point in the complaint, Plaintiff mistakenly refers to Defendant Lekan, a former federal official, as the Commissioner of the New York State Office of Child Support Enforcement. (ECF 1, at 6-7.)

Plaintiff has paid the fees to bring this action. The Court understands Plaintiff's complaint as asserting that federal and state officials have violated his right to procedural due process with respect to the calculation and collection of his child-support debt. The Court therefore construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). For the reasons discussed below, the Court dismisses this action, but grants Plaintiff leave to file an amended complaint within 30 days of the date of this order.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's civil rights complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.*; *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff's complaint is not very clear, but the Court understands it to allege the following: On or about December 1, 1992, a state court ordered Plaintiff to pay $79,882 in child-support debt. In April 2017, officials collected $1,995 from Plaintiff. In or about May 2018, Plaintiff telephoned an Office of Child Support Enforcement ("OCSE") to "[d]ispute the validity of the [d]ebt and its amount." (ECF 1, at 10.) He learned that "[t]here ha[d] been no change in the [b]alance pa[id]." (*Id.*) On or about October 26, 2018, an OSCE informed Plaintiff by mail that it "had identified him as a Child Support Obligor/debtor with emancipated Children who[] . . . owed [a]rrears of [a]pproximately $79,882.00 . . . after deduction of over $1,995.00 . . . in April of 2017." (*Id.* at 9-10.) Following Plaintiff's settlement, on July 31, 2020, of a personal-injury claim against the City of New York, another $1,955 was collected from Plaintiff. The same amount was collected from Plaintiff in March 2021.

Plaintiff alleges that he has not, at any time, received "an itemized flow sheet to verify that payments were made and that the State [d]ebt with its interest were tacked onto the principal

3

amount owed for arreage [sic] in the amount of $79,882.00." (*Id.* at 10.) He also alleges that officials have incorrectly calculated his child-support debt, and that they have failed to take into account $6,000 in payments that he has made toward that debt.

Plaintiff further asserts that he has been denied "a hearing to verify the [d]ebt [o]bligation [that] is the subject of the complaint." (*Id.* at 11.) He alleges that officials have been illegally garnishing his income or seizing his assets to satisfy his child-support debt. In addition to seeking damages, Plaintiff requests that the Court discharge his child-support debt.

**DISCUSSION**

**A.     This Court cannot discharge Plaintiff's child-support debt**

The Court understands Plaintiff's complaint as requesting that the Court: (1) nullify a determination of a state court with regard to Plaintiff's obligation to pay child-support debt, and (2) enjoin state officials from garnishing his income or seizing his assets to satisfy his child-support debt. Under the *Rooker-Feldman* doctrine, however, this Court lacks subject matter jurisdiction to consider any claim challenging the validity or enforcement of a state court's final order or judgment regarding the calculation or collection of Plaintiff's child-support debt. In the alternative, under the domestic-relations abstention doctrine, the Court must abstain from exercising its federal question jurisdiction over such claims.

   **1.     The *Rooker-Feldman* doctrine**

Under the *Rooker-Feldman* doctrine, federal district courts lack authority to review final state court orders and judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("28 U.S.C. § 1331 [the statute granting federal district courts federal question jurisdiction] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments . . . ."); *Dorce v. City of New York*, 2 F.4th 82,

4

101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)).

"[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of the state court judgment; and (4) the state court judgment must have been rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (quoting *Hoblock*, 422 F.3d at 85).

A plaintiff's challenge in a federal district court to "the validity or enforcement of [a] child support order itself" is barred by the *Rooker-Feldman* doctrine. *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013); *see generally Dorce*, 2 F.4th at 104 ("[P]laintiffs are permitted to seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment."). Thus, a plaintiff's request that this Court review and overturn an order or judgment of a state court determining that the plaintiff owes child support, or setting the amount of child support owed, is barred by that doctrine. *See, e.g.*, *Adams v. Horton*, 725 F. App'x 78, 79 (2d Cir. 2018) (summary order) ("Adams dresses up her claims as failures to accommodate her disabilities, but she primarily complains about the child support amount ordered by a court, and the accommodation she seeks is to *reduce* the amount. She thus attacks the orders by challenging the defendants' enforcement. Her claim is

5

therefore barred by *Rooker-Feldman*.") (italics in original); *Legister v. Rodwitz*, No. 1:20-CV-9330, 2020 WL 7405672, at *3 (S.D.N.Y. Dec. 16, 2020) (citing cases); *see also Davis v. Westchester Cnty. Family Court*, No. 16-CV-9487, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017) ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears.") (internal quotation marks and citation omitted).

The *Rooker-Feldman* doctrine also bars claims arising out of a third party's actions when those actions "are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88 (holding that "[w]here a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that" the *Rooker-Feldman* doctrine bars). Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders that is carried out by garnishment of income and seizure of assets. *See Fernandez v. Turetsky*, 645 F. App'x 103, 104-05 (2d Cir. 2016) (summary order) (seizure of child-support obligor's vehicles); *Rosenberger v. New York State Office of Temporary & Disability Assistance*, 153 F. App'x 753, 755 (2d Cir. 2016) (summary order) (garnishment of wages); *Gainyu v. Lopez*, No. 1:19-CV-11606, 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) (citing cases); *see generally Dorce*, 2 F.4th at 105 (Second requirement for *Rooker-Feldman* doctrine is met when "the injury . . . complain[ed] of is the loss of . . . property, which was caused by the state court judgments that divested [the plaintiffs] of that property. By effecting the divestiture of [the plaintiffs'] interest in their property, the state court judgments thus directly inflicted the injury complained of.").

By asking this Court to discharge his child-support debt, Plaintiff challenges the validity of a final order and judgment of a state court, issued on or about December 1, 1992, before

Plaintiff filed this action, in which the state court determined that Plaintiff owes child support and set an amount owed. Thus, such claims for relief are barred by the *Rooker-Feldman* doctrine, and the Court dismisses them for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291 (the *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction").

### 2. The domestic-relations abstention doctrine

Federal district courts must abstain from exercising federal question jurisdiction over claims involving domestic-relations issues, so long as those claims may be fully and fairly determined in the state courts. *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court must abstain from exercising its federal question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted) *see also Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("[T]he domestic relations *abstention* doctrine articulated in *American Airlines* [applies in federal question cases]. And . . . *American Airlines* remains good law in this Circuit.") (emphasis in original), *cert. denied*, 140 S. Ct. 2763 (2020).

Plaintiff asserts claims under the Court's federal question jurisdiction, and asks this Court to discharge the child-support debt that a state court determined that he owes and that state officials are garnishing his income or seizing his property to satisfy. His claims thus involve domestic-relations issues, and unless he can show that there is an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts, this Court must abstain from exercising its federal question jurisdiction over his claims arising from the calculation or collection of his child-support debt. *Am. Airlines*, 905 F.2d at 14; *see, e.g., Simmons v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) (applying domestic-relations abstention doctrine to challenge of child-support calculation);

7

*Myers v. Sara Lee Corp.*, No. 08-CV-1421, 2009 WL 10706711, at *10 (E.D.N.Y. Apr. 13, 2009) (same as to child-support enforcement).

Plaintiff fails to allege any facts suggesting that there are obstacles preventing him from receiving a full and fair determination regarding whether he owes child support, the amount owed, or the garnishment of his income or seizure of his property to satisfy his child-support debt.[2] Accordingly, under the domestic-relations abstention doctrine, the Court abstains from exercising its federal question jurisdiction over Plaintiff's claims in which he seeks the discharge of his child-support debt.

**B.    Scott M. Lekan**

The Court construes Plaintiff's complaint as asserting claims under *Bivens* against Defendant Lekan, a former federal official. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights."). While Plaintiff asserts that Lekan has violated federal statutes with regard to the calculation and collection of Plaintiff's child-support debt (ECF 1, at 6-7) (a duty usually carried out by state officials, not federal officials), Plaintiff has alleged no facts suggesting that Lekan has violated Plaintiff's federal constitutional rights. The Court therefore dismisses Plaintiff's claims under *Bivens* against Lekan for failure to state claim on which relief may be granted.[3] *See* 28 U.S.C. § 1915A(b)(1).

---

[2] The Court discusses below the process by which a person may challenge calculation and collection of child-support debt. *See supra* at 10-11.

[3] Plaintiff alleges that Lekan violated 42 U.S.C. § 653 and the Fair Debt Collection Practices Act ("FDCPA"). Section 653 provides for the creation of the Federal Parent Location Service within HHS; it does not provide a private right of action. In addition, to the extent that Plaintiff's complaint can be understood as asserting claims under the FDCPA against Lekan, a former federal official, arising from the calculation or collection of Plaintiff's child-support debt

C.  **Procedural due process**

The Court understands Plaintiff's complaint as asserting claims that state officials have violated Plaintiff's right to procedural due process by miscalculating and illegally garnishing Plaintiff's income or seizing his assets to satisfy his child-support debt without providing him with a hearing or other means to challenge those state officials' actions.[4]

The Due Process Clause only protects "against deprivations without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

---

(a duty usually carried out by state officials), such claims fail because, for the purpose of claims brought under the FDCPA, federal officials are not considered "debt collectors" when acting in the performance of their official duties. *See* § 15 U.S.C. 1692a(6)(C).

[4] This procedural due process challenge is not precluded by the *Rooker-Feldman* doctrine because if successful, this challenge would not overturn or reverse the applicable state court judgment. *See Dorce*, 2 F. 4th at 107 (procedural due process challenge arising from lack of notice of state court foreclosure action not precluded by *Rooker-Feldman* doctrine because the doctrine "does not prevent [a federal district court], as part of adjudicating an 'independent claim,' from 'den[ying] a legal conclusion that a state court has reached'" (quoting *Exxon Mobil Corp.*, 544 U.S. at 293) (second alteration in original))); *see also Hong Tang v. Grossman*, No. 19-CV-6099, 2021 WL 1091908, at *4 (E.D.N.Y. Mar. 22, 2021) ("Plaintiff does not challenge or seek reversal of the state court judgment . . . . Instead, he challenges [the defendant's] alleged failure to adhere to proper procedures while *carrying out* the state court judgment. That the alleged procedural defect occurred while carrying out the state court judgment does not mean the state court judgment *caused* the challenged defect.") (footnote omitted, italics in original).

Generally, some kind of predeprivation process must be provided before liberty or property rights are infringed upon. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). Where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, however, the Due Process Clause is satisfied if the state provides an adequate postdeprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate postdeprivation remedy); *Rivera-Powell*, 470 F.3d at 465 (holding that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy").

In New York, a child-support debtor is entitled to the postjudgment remedies outlined in Article 52 of the New York Civil Practice Law and Rules ("Article 52" or "CPLR"). For example, when a local social services district's Support Collection Unit issues an execution for enforcement of current child support or child-support arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and challenge it administratively. *See* N.Y.C.P.L.R. § 5241(a)(8), (e). If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the CPLR ("Article 78"). *Beattease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (2d Dep't 2012); *see Smith v. N.Y. Child Support Process Ctr.*, No. 19-CV-9266, 2019 WL 6312178, at *3 (S.D.N.Y. Nov. 25, 2019), *appeal dismissed*, No. 20-26, 2020 WL 3643569 (2d Cir. May 7, 2020), *cert. denied*, 141 S.Ct. 564 (2020).

Here, while Plaintiff alleges that state officials have incorrectly or illegally garnished his income or seized his assets without giving him notice or an opportunity to challenge the garnishment or seizures, those facts alone do not give rise to a claim of a procedural due process violation. State law, specifically, Article 52 and Article 78, provide procedural due process to child-support debtors facing garnishment or seizure. If state officials failed to comply with state law, such an omission would constitute a random and unauthorized deprivation of property. That deprivation does not, however, constitute a violation of procedural due process so long as the state provides an adequate postdeprivation remedy.

Plaintiff cannot assert that he was denied procedural due process if he never sought Article 52 administrative review or Article 78 judicial review. *See Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 113 (S.D.N.Y. 1991) ("[I]f a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983."); *see also Smith*, 2019 WL 6312178, at *3 ("[T]he fact that [Article 52 and Article 78] remedies were available to him defeats his due process claim." (citing *Rivera-Powell*, 470 F.3d at 465))). Plaintiff has alleged no facts showing that he has sought Article 52 review or Article 78 review, or that such process is inadequate. Accordingly, to the extent that Plaintiff asserts claims under Section 1983 that state officials have violated his right to procedural due process, the Court dismisses those claims for failure to state a claim on which relief may be granted.[5] *See* § 1915A(b)(1).

---

[5] To the extent that Plaintiff asserts claims against state officials under the FDCPA arising from the calculation or collection of his child-support debt, those claims fail because, for the purpose of the FDCPA, state officials are not considered "debt collectors" when acting in the performance of their official duties. *See* 15 U.S.C. § 1692a(6)(C).

In light of Plaintiff's *pro se* status and his allegations that he tried to challenge state officials' calculation and collection of his child-support debt, however, the Court grants Plaintiff leave to file an amended complaint in which he alleges facts showing that he has been denied procedural due process with regard to the calculation or collection of his child-support debt.

**D.      James Meehan**

Because Plaintiff alleges no facts about Defendant Meehan, the Court must dismiss Plaintiff's claims under Section 1983 or *Bivens* against this defendant. Claims under Section 1983 must be brought against a defendant who is considered a state actor, *e.g.*, *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020), and a plaintiff asserting claims under Section 1983 must allege facts showing the state actor's direct and personal involvement in the alleged constitutional violation, *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Claims under *Bivens*, however, must be brought against a federal official, *Higazy*, 505 F.3d at 169, and a plaintiff asserting claims under *Bivens* must also allege facts showing the federal official's direct and personal involvement in the alleged constitutional violation, *see Reynolds v. United States*, No. 21-CV-4763, 2021 WL 3501201, at *2 (S.D.N.Y. Aug. 9, 2021) (quoting *Tangreti*, 983 F.3d at 620).

As Plaintiff alleges no facts about Meehan, it is unclear whether Meehan is a state official, a federal official, or a private individual, and whether he has been directly involved in the alleged constitutional violations. The Court therefore dismisses Plaintiff's claims under Section 1983 or *Bivens* against Meehan for failure to state a claim on which relief may be granted. *See* §1915A(b)(1). The Court grants Plaintiff leave to file an amended complaint to allege facts showing that Meehan is either a state or federal official, and that he has been directly involved in the alleged violations of Plaintiff's constitutional rights.

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's claims in which he seeks the discharge of his child-support debt under the *Rooker-Feldman* doctrine or under the domestic-relations abstention doctrine. The Court dismisses Plaintiff's remaining claims for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1).

The Court grants Plaintiff 30 days' leave to file an amended complaint to address the deficiencies discussed above. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter judgment dismissing this action for the reasons stated in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to mail a copy of this order Plaintiff and note service on the docket.

SO ORDERED.

Dated:   January 3, 2022
         New York, New York

                                      /s/ Laura Taylor Swain
                                      LAURA TAYLOR SWAIN
                                    Chief United States District Judge